[Cite as *State v. Shamblin*, 2021-Ohio-3784.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 8-21-03

    v.

DAVID M. SHAMBLIN,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 19 03 0067

Judgment Affirmed

Date of Decision: October 25, 2021

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Alice Robinson-Bond* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, David M. Shamblin ("Shamblin"), appeals the January 27, 2021 judgment entry of sentence of the Logan County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On March 12, 2019, the Logan County Grand Jury indicted Shamblin on a single count of possession of drugs in violation of R.C. 2925.11(A), (C)(2)(a), a fifth-degree felony. (Doc. No. 4). The indictment further alleged that Shamblin was previously convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1) in 2018 and trafficking in marijuana in violation of R.C. 2925.03(A)(1) in 1993. (*Id.*). On March 18, 2019, Shamblin appeared for arraignment and entered a plea of not guilty. (Doc. No. 13).

{¶3} On July 18, 2019, Shamblin withdrew his plea of not guilty and entered a guilty plea, under a negotiated-plea agreement, to the indictment. (Doc. No. 37). Specifically, in exchange for Shamblin's change of plea, the State agreed to a joint-sentencing recommendation. (*Id.*). The trial court accepted Shamblin's guilty plea, found him guilty, and sentenced him (based on the joint-sentencing recommendation of the parties) to five years of community control. (*Id.*). The trial court further ordered that Shamblin's sentence in this case to run concurrent to his sentence imposed in his 2018 trafficking case. (*Id.*). Importantly, Shamblin did not directly appeal his conviction or sentence.

-2-

{¶4} On October 27 and November 20, 2020, the State filed motions requesting that the trial court revoke Shamblin's community control after he "tested positive for Heroin" on October 15 and he "used methamphetamines" on November 17. (Doc. Nos. 44, 53). Subsequent to preliminary-revocation hearings on October 30 and November 30, 2020, Shamblin filed a motion to suppress evidence on December 11, 2020. (Doc. Nos. 47, 58, 60). (*See also* Doc. No. 59). The State filed a memorandum in opposition to Shamblin's motion to suppress evidence on December 18, 2020. (Doc. No. 63). (*See also* Doc. No. 64). Following a hearing on December 22, 2020, the trial court denied Shamblin's motion to suppress evidence on January 8, 2021. (Doc. No. 66).

{¶5} The trial court proceeded to a final-revocation hearing on January 27, 2021, during which the trial court concluded that Shamblin violated the terms and conditions of his community-control sanctions. (Doc. No. 72). That same day, the trial court ordered Shamblin to be supervised under the same terms and conditions of his original community-control sanctions with three additional sanctions: (1) "obtain a drug and alcohol assessment, attend counseling as required, and follow all recommended courses for treatment"; (2) "participate in the Justice Reinvestment Grant Program"; and "pay all court costs, costs of prosecution, and fees permitted by 2929.18." (*Id.*).

{¶6} Shamblin filed his notice of appeal on February 8, 2021 and raises one assignment of error. (Doc. No. 73).

**Assignment of Error**

**The trial court abused its discretion in finding a community control violation based on illegal drug use.**

{¶7} In his sole assignment of error, Shamblin argues that the trial court abused its discretion by concluding that he violated the terms and conditions of his community-control sanctions. Specifically, Shamblin contends that the trial court abused its discretion by concluding that there was substantial evidence that he violated the terms and conditions of his community-control sanctions "based on the two positive drug tests * * * ." (Appellant's Brief at 8).

*Standard of Review*

{¶8} The decision of a trial court finding a community-control violation will not be disturbed absent an abuse of discretion. *State v. McKeithen*, 3d Dist. Marion No. 9-08-29, 2009-Ohio-84, ¶ 7. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

{¶9} "This Court has held that although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. *McKeithen* at ¶ 22. "Therefore, the minimum due process requirements afforded a

defendant in a probation revocation proceeding differ from those in a criminal trial." *Id.* The minimum due-process requirements for revocation hearings are: (a) Written notice of the claimed violations; (b) disclosure of evidence against him or her; (c) the opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses; (e) a neutral and detached hearing body; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revocation. *Id.*

{¶10} Since a community-control-revocation hearing is not a criminal proceeding, "the State is not required to prove a violation of the terms of community control beyond a reasonable doubt." *Id.* at ¶ 6. "The State must, instead, show 'substantial' evidence that the offender violated the terms of his community control sanctions." *Id. See also State v. Miller*, 10th Dist. Franklin No. 03AP-1004, 2004-Ohio-1007, ¶ 10 (noting that a trial court is to consider the credibility of the witnesses when making its substantial-evidence determination). This court has stated that "'[s]ubstantial evidence is akin to a preponderance-of-the-evidence burden of proof.'" *State v. Boykins*, 3d Dist. Marion No. 9-14-28, 2015-Ohio-1341, ¶ 21*,* quoting *State v. Burdette*, 5th Dist. Morrow No. 10-CA-9, 2011-Ohio-4425, ¶ 26, citing *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, ¶ 18 (6th Dist.). "'Substantial evidence is considered to consist of more than a mere scintilla of

evidence, but somewhat less than a preponderance.'" *Id.*, quoting *Burdette* at ¶ 26. *See also State v. Hope*, 6th Dist. No. WD-18-080, 2019-Ohio-3023, ¶ 14.

{¶11} Here, Shamblin argues that the State did not present substantial evidence at the community-control-revocation hearing that he violated the terms and conditions of his community-control sanctions. Specifically, he argues that the drug-test evidence purporting to show the presence of drugs in his saliva and urine, respectively, were inadequate to prove that he used drugs in contravention of the terms and conditions of his community-control sanctions. Shamblin contends that "[t]he documentation from [the] saliva test was inadequate to determine that the positive sample was from [him]." (Appellant's Brief at 8). He further contends that the urine test was "faulty insofar as it was merely a rapid test which was never preserved for further testing or sent to a lab for confirmation." (*Id.*).

{¶12} Shamblin's argument is without merit. Importantly, Shamblin admitted to his parole officer, Deloger May III ("May"), that he used heroin. (Jan. 27, 2021 Tr. at 9). (*See also* Dec. 22, 2020 Tr. at 33-34, 37-39). Nevertheless, the State presented substantial evidence at the community-control-revocation hearing from which the trial court could conclude that Shamblin violated the terms and conditions of his community-control sanctions.

{¶13} As an initial matter, at the community-control-revocation hearing, the parties agreed to the trial court taking judicial notice of the testimony presented and

the evidence admitted at the December 22, 2020 suppression hearing. (*See* Jan. 27, 2021 Tr. at 5); *State v. Daniels*, 9th Dist. Summit 28444, 2017-Ohio-8151, ¶ 7. *See also* Evid.R. 201. Specifically, at the December 22, 2020 hearing, the State presented the testimony of Ryan Pratt ("Pratt"), the intake superintendent at Logan County Children's Services. Pratt testified that Logan County Children's Services received a report that Shamblin's "baby was born positive for several different drugs." (*Id.* at 7). As a matter of consequence, Pratt, along with May, arrived unannounced at Shamblin's residence on October 13, 2020 and requested Shamblin and his wife to "take a voluntary oral drug screen" to which they agreed. (*Id.* at 8-10). Pratt described the procedure he followed to administer the saliva test. (*See id.* at 10). Importantly, Pratt testified that it was *not* possible for him to have "confused" Shamblin's test with Shamblin's wife's test. (*Id.* at 53). Pratt further testified that "Shamblin was positive for heroin metabolites." (*Id.* at 11).

{¶14} Furthermore, Pratt testified on Shamblin's behalf at the January 27, 2021 community-control-revocation hearing. In particular, Pratt identified Defense Exhibit D as the receipt copy of the paperwork which accompanies the saliva test to the lab. (Jan. 27, 2021 Tr. at 14-15). Pratt testified that Defense Exhibit D reflects his and Shamblin's signatures. (*Id.* at 16-17, 19). Pratt also identified Defense Exhibit C as the lab results of Shamblin's saliva test, which "matches the specimen ID" reflected on Defense Exhibit D and "confirms that [it] is David Shamblin's

screen." (*Id.* at 20-21). Nevertheless, Pratt agreed that "the only way that [the lab] could have gotten the *name* [from Defense Exhibit D] is one of two ways; either read [what he] wrote * * * in column one or it was somehow able to decipher the signature on [column] number three * * * ." (Emphasis added.) (*Id.* at 21-22).

{¶15} On cross-examination, Pratt testified that the lab identifies a specimen from the specimen-identification number rather than a handwritten name on the paperwork accompanying the specimen. (*Id.* at 26-27).

{¶16} Shamblin testified on his own behalf that Defense Exhibit D does not reflect his signature. (*Id.* at 30).

{¶17} The State also presented the testimony of May at the December 22, 2020 suppression hearing, who testified that he requested Shamblin submit to a urine screen as a condition of his probation in November 2019. (Dec. 22, 2020 Tr. at 30). May testified that State's Exhibits A and B reflect that Shamblin "tested positive for methamphetamine and Suboxone." (*Id.* at 32). Even though the urine test reflected the presence of methamphetamine, Shamblin "protest[ed] the methamphetamine use * * * ." (*Id.*). However, May testified that the urine-test results were not submitted to a lab to confirm the presence of methamphetamine. (*Id.* at 31, 33).

{¶18} "At a community-control-revocation hearing the trial court, being in the better position to observe the witnesses and hear their testimony, is entitled to

deference on issues of witness credibility and weight of the evidence." *Boykins*, 2015-Ohio-1341, at ¶ 27. Here, the trial court was in a better position to assess the credibility of the witnesses and the trial court chose to believe Pratt and May instead of Shamblin. *Accord id.* at ¶ 27 ("Here, the trial court was in a better position to assess the credibility of the witnesses and the trial court chose to believe Lieutenant Adkins instead of Boykins."). *See also State v. Scheck*, 3d Dist. Marion No. 9-08-20, 2008-Ohio-5314, ¶ 22.

{¶19} Based on the evidence presented, we conclude that there was substantial evidence presented that Shamblin violated the terms and conditions of his community-control sanctions. *See id. See also Burdette*, 2011-Ohio-4425, at ¶ 30. Therefore, the trial court did not abuse its discretion by concluding that Shamblin violated the terms and conditions of his community-control sanctions.

{¶20} For these reasons, Shamblin's assignment of error is overruled.

{¶21} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/jlr**