[Cite as *State v. Sandlin*, 2022-Ohio-570.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,            CASE NO. 3-21-10

    v.

TARA SANDLIN,                        O P I N I O N

    DEFENDANT-APPELLANT.

STATE OF OHIO,

    PLAINTIFF-APPELLEE,            CASE NO. 3-21-11

    v.

TARA SANDLIN,                        O P I N I O N

    DEFENDANT-APPELLANT.

**Appeals from Crawford County Common Pleas Court**
**Trial Court Nos. 19-CR-0220 and 20-CR-0149**

**Judgments Affirmed**

**Date of Decision:   February 28, 2022**

APPEARANCES:

    *Howard A. Elliott* **for Appellant**

    *Rhonda L. Best* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Tara Sandlin ("Sandlin"), brings these appeals from the July 7, 2021 judgments of the Crawford County Common Pleas Court finding that Sandlin violated her community control in trial court cases 19-CR-220 and 20-CR-149. For the reasons that follow, we affirm.

*Background*

{¶2} On May 21, 2019, Sandlin was indicted in Crawford County case 19-CR-220 for Felonious Assault in violation of R.C. 2903.11(A)(2), a second degree felony, and Domestic Violence in violation of R.C. 2919.25(A), a first degree misdemeanor, for an incident wherein she stabbed the father of her child. Pursuant to a written, negotiated plea agreement, Sandlin agreed to plead guilty to the reduced, amended charge of Aggravated Assault in violation of R.C. 2903.12(A)(2)/(B), a fourth degree felony, and Domestic Violence as indicted.

{¶3} On July 17, 2019, Sandlin was sentenced to 2 years of community control and notified that if she failed to abide by the terms and conditions of her community control she could be sentenced to 18 months in prison for Aggravated Assault and 6 months in jail for Domestic Violence.

{¶4} On May 12, 2020, Sandlin was indicted in a new Crawford County case, 20-CR-149, which alleged that she committed Criminal Non-Support in violation of R.C. 2919.21(A)(2), a fifth degree felony. Pursuant to a written, negotiated plea

agreement, Sandlin agreed to plead guilty to the charge as indicted. In exchange, the parties agreed to a joint sentencing recommendation that placed Sandlin on 5 years of community control. The written agreement indicated that if Sandlin failed to successfully complete her community control she would be subject to a 12-month prison term. On July 13, 2020, the trial court imposed the agreed recommended sentence.

{¶5} On March 30, 2021, Sandlin's probation officer filed a motion for Sandlin to show cause as to why her community control should not be revoked in both trial court cases due to Sandlin allegedly testing positive for methamphetamine and having drug paraphernalia in her residence.

{¶6} On May 10, 2021, a hearing was held to determine if Sandlin had violated her community control. At the hearing, Sandlin's probation officer testified that after he received reports of drug activity at Sandlin's residence, he had Sandlin come into the office and perform a urine test, which was positive for methamphetamine. Sandlin claimed that the positive result must have been caused by somebody putting the substance in her drink or because she was around people who might have been using.

{¶7} Following the drug screen, the probation officer took Sandlin back to her residence and the residence was searched. Officers located "drug paraphernalia, [] scales, baggies, pipes and whatnot." (May 10, 2021, Tr. at 16). The probation

officer testified that some of the items were located in a closet attached to Sandlin's daughter's room. Sandlin claimed that the items were not hers and that they belonged to other people, despite some items being located in what the probation officer understood to be Sandlin's bedroom.

{¶8} On cross-examination the probation officer testified that Sandlin lived with her boyfriend and another individual who was a convicted felon. He testified that the closet where some of the items were found was not secure. The probation officer testified that Sandlin's presumptive positive drug test was not sent to a lab for confirmation.

{¶9} Sandlin's fiancé/the father of her child testified at the hearing that the drug paraphernalia belonged to the other individual in the house and that the closet was actually secured. He testified that he did not know that the other individual was a felon or that the other individual was involved with drugs.

{¶10} At the conclusion of the hearing, the trial court found that Sandlin had violated her community control by using drugs; however, the trial court determined that the State narrowly failed to establish that the drug paraphernalia was possessed by Sandlin. Nevertheless, the trial court thought the presence of the paraphernalia in the residence added credence to Sandlin's positive drug screen, even in the absence of a lab confirmation.[1]

---

[1] The trial court noted that the drugs being in the house could have resulted in some type of child endangering charge, but that was not before the court.

{¶11} On June 30, 2021, the case proceeded to sentencing. The State requested that Sandlin's community control be revoked in both trial court cases, and that she be sentenced to serve 16 months on the Aggravated Assault charge and 10 months on the Criminal Non-Support charge, consecutively for an aggregate 26-month prison term. The defense requested that Sandlin's community control be continued.

{¶12} Ultimately, the trial court continued Sandlin's community control in both cases; however, Sandlin was ordered to serve six months in the county jail as an additional community control sanction in case 19-CR-220. In case 20-CR-149, conditions were added to Sandlin's community control that she complete a drug/alcohol assessment and complete drug/alcohol treatment. Judgment entries memorializing Sandlin's sentences were filed July 7, 2021. It is from these judgments that Sandlin appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court acts improperly when i[t] uses an unconfirmed positive drug screen to find a nontechnical community control violation which must be reversed.**

**Assignment of Error No. 2**
**The trial court's finding of a nontechnical and criminal community control violation based upon the sole testimony of the supervising officer and an unconfirmed positive drug screen is against the manifest weight of the evidence.**

**Assignment of Error No. 3**
**The trial court's finding of a nontechnical and criminal community control violation based upon the sole testimony of the supervising officer and an unconfirmed positive drug screen is not supported by the sufficiency of the evidence and must be set [sic] vacated.**

{¶13} As the assignments of error are interrelated, we will address them together.

*First, Second, and Third Assignments of Error*

{¶14} In her assignments of error, Sandlin challenges the trial court's determination that she was in violation of her community control. Specifically, she argues that the evidence in this matter did not support the finding of a violation.

Standard of Review

{¶15} The decision of a trial court finding a community-control violation will not be disturbed absent an abuse of discretion. *State v. Shamblin*, 3d Dist. Logan No. 8-21-03, 2021-Ohio-3784, ¶ 8. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

Analysis

{¶16} A community control revocation hearing is not a criminal proceeding, so "'the State is not required to prove a violation of the terms of community control beyond a reasonable doubt.'" *Shamblin* at ¶ 10, quoting *State v. McKeithen*, 3d Dist. Marion No. 9-08-29, 2009-Ohio-84, ¶ 6. "The State must, instead, show

-6-

'substantial' evidence that the offender violated the terms of h[er] community control sanctions." *McKeithen* at ¶ 6; *see also State v. Miller* 10th Dist. Franklin No. 03AP-1004, 2004-Ohio-1007, ¶ 10 (noting that a trial court can consider the credibility of witnesses when makings its substantial-evidence determination). This Court, and other Ohio Appellate Courts, have stated that "'[s]ubstantial evidence is *akin* to a preponderance-of-the-evidence burden of proof.'" (Emphasis added.) *State v. Boykins*, 3d Dist. Marion No. 9-14-28, 2015-Ohio-1341, ¶ 21, quoting *State v. Burdette*, 5th Dist. Morrow No. 10-CA-9, 2011-Ohio-4425, ¶ 26. However, "substantial evidence" has also been stated "to consist of more than a mere scintilla evidence, but somewhat less than a preponderance." *State v. Herald*, 3d Dist. Defiance No. 4-16-09, 2016-Ohio-7733, ¶ 27.

{¶17} In this case, the trial court determined that Sandlin violated "Rule 7" of her community control, which reads as follows:

> **"I will not purchase, possess, use or have under my control any narcotic drug or other controlled substance or illegal drugs, including any instrument, device or other object used to administer drugs or to prepare them for administration, unless it is lawfully prescribed for me by a licensed physician. I agree to inform my supervising officer promptly of any such prescription and I agree to submit to drug testing if required by the Adult Probation Department."**

(Doc. No. 18).

{¶18} In order to establish that Sandlin violated the cited provision of her community control, the State presented the testimony of Eric Bohach, Sandlin's

-7-

probation officer. Bohach testified that he received reports of drugs possibly being at Sandlin's residence so he had Sandlin come in for a drug screen. At that time, Sandlin tested positive for methamphetamine. This positive test prompted Bohach to search Sandlin's residence where various drug paraphernalia was found.

{¶19} The trial court found that the positive drug screen, even without being sent to a lab for confirmation, was sufficient to establish by a "preponderance of the evidence" that Sandlin had violated the terms of her community control, particularly given her equivocal statements regarding how the drug could have gotten into her system. Further, although the trial court determined that the State had not quite met its burden to establish that Sandlin possessed the drug paraphernalia, the presence of the drug paraphernalia in the house lent credence to the positive drug test even in the absence of lab confirmation.

{¶20} On appeal, Sandlin makes multiple arguments in an attempt to establish that the trial court's finding of a violation was an abuse of discretion. In her first assignment of error she argues that the "unconfirmed screening test" was not sufficient to establish a violation of community control in this matter. Rather, she argues that lab confirmation was necessary to establish a violation. In support of her argument, Sandlin emphasizes that in OVI criminal trials substantial compliance with drug/alcohol testing rules had to be established, and a foundation

had to be presented before the results could be the basis of a conviction. *State v. Williams*, 1st Dist. Hamilton No. C-180574, 2020-Ohio-1367.

{¶21} Contrary to Sandlin's argument regarding OVI criminal *trials*, community control hearings are not subject to the rules of evidence. Evid.R. 101(C)(3); *State v. Motz*, 12th Dist. No. CA2019-10-109, 2020-Ohio-4356, ¶ 17. Thus the same rigorous standards in a criminal trial are simply inapplicable here. Further, in addition to the relaxed evidentiary standards, the burden of proof is lower in community control violation hearings. Cases like *Williams* and the "OVI testing standards therein" simply have no bearing in this community control violation hearing where the rules of evidence do not apply and the standard of proof is lower. Thus, this argument is not well-taken and Sandlin's first assignment of error is overruled.

{¶22} In her second and third assignments of error, Sandlin argues that the trial court's determination was not supported by sufficient evidence and that the trial court's finding was against the manifest weight of the evidence.[2] In support of her argument, she again argues that the urine test was not sent to a lab for confirmation. She also claims that the trial court improperly determined that Sandlin "possessed" methamphetamine by consuming it and having it in her urine, contrary to the holding in *State v. Foreman*, --- Ohio St. ---, 2021-Ohio-3409.

---

[2] Again, our standard of review is confined to determining whether the trial court abused its discretion. *See Shamblin*, *supra*.

**{¶23}** Initially, we note that the trial court specifically stated, "I'm going to find that Defendant has tested positive, that, that is a probation violation[.]" (May 10, 2021, Tr. at 38). Rule 7 of Sandlin's community control prevented her from using illegal drugs/narcotics. The trial court found that Sandlin had used methamphetamine based on the drug screen, the circumstances surrounding her equivocal denial, and the paraphernalia in her home. Based on the plain wording of her terms of community control, the trial court's finding is not inaccurate and we do not find that the trial court abused its discretion.[3]

**{¶24}** Finally, before we conclude, we note that Sandlin places a significant amount of emphasis on the terms "technical" and "nontechnical" violations of community control in her brief. These terms are largely only relevant to the imposition of a prison sentence following the *revocation* of community control. *See State v. Nelson*, 162 Ohio St.3d 338, 2020-Ohio-3690. Here, Sandlin's community control was *not* revoked, it was continued, with specific conditions added.[4] Thus her emphasis on the words "technical" and "nontechnical" have no particular relevance to this appeal.

---

[3] Regardless of any other statements by the trial court indicating that Sandlin may have "possessed" methamphetamine due to ingesting it, her community control required her both not to possess narcotics or controlled substances *and* not to *use* any narcotics or controlled substances. Thus the possession is largely irrelevant.

[4] Sandlin was ordered to spend 6 months in jail as a community control sanction for her violation. This is a permissible community control sanction under R.C. 2929.16. Notably, her jail term was set to commence June 30, 2021, which would have expired by now. Thus even if we found that the trial court erred in this matter, there is little remedy that could be provided given that her community control was continued.

{¶25} In sum, we find that the trial court did not abuse its discretion by determining that Sandlin violated her community control for testing positive for methamphetamine. Therefore, Sandlin's first, second, and third assignments of error are overruled.

*Conclusion*

{¶26} For the foregoing reasons, Sandlin's assignments of error are overruled and the judgments of the Crawford County Common Pleas Court are affirmed.

***Judgments Affirmed***

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/jlr**